PERRY & DEAN and FULTON COLVILLE, *contra*.

---

WILLCOX *et al. v.* DUNLAP & WORTHAM *et al.*

SIMMONS J.—The trial judge did not abuse his discretion in granting the injunction and appointing a receiver in this case. The fact that the sheriff seized the goods of the defendant by virtue of a mortgage *fi. fa.* before daylight in the morning, five hours before the injunction was granted, did not deprive the defendant of his character of trader so as to preclude the filing of the application for injunction and receiver, under section 3149(a) of the code.

April 29, 1889.                    *Judgment affirmed.*

Injunction and receiver. Traders. Executions. Practice. Before Judge ROBERTS. Pulaski county. At Chambers, February 26, 1889.

Dunlap & Wortham and others filed their petition, alleging that they were creditors of L. B. Willcox; that their demands against him were due, and since the same had become due, they had demanded pay-

ment of them from him personally, and he refused to pay them; that at the time of contracting the debts, Willcox was, and is still, a trader engaged in buying and selling buggies, etc; that he contracted the debts in order to carry on said business; and that he is insolvent. The amount of the indebtedness to the various plaintiffs is set forth, and one of them alleges that suit on his claim has already been commenced against Willcox. They allege further that Willcox is largely indebted to others; that his commercial papers are dishonored; that his liabilities largely exceed his assets; and that he is daily disposing of his assets at prices below their worth, and yet that he is continuing to contract new indebtedness, and thus rendering the collection of plaintiffs' claims more hopeless day by day. Discovery is waived, and injunction, receiver, etc. prayed.

On September 25th, 1888, a temporary restraining order was granted, and J. H. Stetson appointed temporary receiver, with direction to take charge of and preserve all the assets of defendant until further order, etc.; and to give bond.

Plaintiffs amended their petition, making the following allegations, in substance: On the night of the 24th of September, 1888, M. T. Hodge, as counsel for Lewis, Leonard & Co., went to the house of the clerk of the superior court of Pulaski county, aroused the clerk from sleep, and got him to issue a mortgage *fi. fa.* in favor of Lewis, Leonard & Co. against Willcox for the sum of $300 principal, with interest, etc. from September 15th, 1888. The affidavit to foreclose the mortgage was made before one as notary public of said county who was not such notary, and the affidavit and other papers were not filed in the office of the clerk until some time during the day of September 25th, 1888, and after the injunction had been granted and receiver appointed. The mortgage was dated Septem-

ber 24th, 1888, and due the——day of——, 188—. On said 25th of September, after the granting of injunction, etc. Lewis, Leonard & Co. foreclosed against said Willcox a mortgage for $10,020.50 principal, with interest and attorney's fees, dated September 18th, 1888, to secure three notes, one dated August 5th, 1884, due October 15th, 1884, one dated March 4th, 1885, due on demand, and one for $6,389.73, dated September 13th, 1888, and due on demand; said mortgage is not under seal, and has never been marked "filed in office," and in the affidavit of foreclosure there is no allegation of demand for the payment of the notes due on demand. Hodge took the mortgage and the affidavit of foreclosure and refused to deliver them to the clerk, of whom petitioners' attorney had demanded to see them, until late in the afternoon of September 25th. On that day, W. G. Hunt, as sheriff of the county, levied the two mortgage *fi. fas.* on all the personal property of Willcox. The two mortgages mentioned were never recorded until late in the afternoon of said day, and until after the granting of the injunction, etc. They are fraudulent mortgages, and made up of a pretended indebtedness. Lewis, Leonard & Co. have been otherwise amply secured by Willcox with collaterals, such as notes and mortgages, and they are aiding him to defeat his honest creditors, and have taken possession of his books and accounts in carrying out this scheme. The sheriff has seized all the visible personalty of Willcox, and refuses to deliver it to the receiver. Lewis, Leonard & Co. knew that Willcox had been insolvent for years, and had stated that he did not owe them exceeding $3,500 on mortgages. They have been dealing with him for years, charging usurious interest, and on a fair settlement he would owe them nothing or a very small amount. The prayers are, that the sheriff be made a party, be enjoined from proceeding with the *fi. fas.*, and be directed to turn over to the re-

ceiver the property sezed by him ; that Lewis, Leonard and Co. and R. G. Lewis, one of the firm, be made defendants, restrained from preceeding with the *fi. fas.*, required to bring into court the mortgages, *fi. fas.* and all collaterals, etc. turned over to them by Willcox ; that the mortgages and *fi. fas.* may be cancelled and declared null, and that the transactions between Willcox, Lewis, Leonard & Co. and R. G. Lewis may be examined into, and a full and fair accounting had, etc. Certain interrogatories are addressed to Lewis, Leonard, & Co. and R. G. Lewis, not necessary to be set forth.

This amendment was sworn to September 26th, 1888, and filed in office October 1st, 1888. Attached to it as exhibits are copies of the mortgages mentioned and the affidavits made to foreclose them. The affidavits to foreclose the $300 mortgage bears date September 24th, 1888, and the other bears date September 25th, 1888. The latter alleges that the indebtedness secured by the mortgage to which it relates is due and unpaid, but does not allege a demand. It does not appear when these mortgages were recorded. The original petition is verified by the affidavit of H. M. Wortham, who swears that he is one of the firm of Dunlap & Wortham, and that the facts stated in the petition are true as therein stated. The amendment to the petition is verified by the affidavit of the same person, that the facts stated in the same are true to the best of his knowledge and belief.

On September 29th, 1888, the judge ordered, among other things, that the amendment be allowed ; that parties be made as prayed ; that Stetson be removed and D. C. Joiner appointed temporary receiver upon giving bond ; that the receiver take charge of the assets of Wilcox, make and file an inventory thereof, and after advertisement, sell the personal property, etc.

The defendants demurred on the following grounds :

(1) That before the petition was sanctioned, and be-

fore it was filed, the business of Wilcox as a trader or in other capacity had ceased; and all his stock in trade and all his facilities for carrying on his trade had been in the possession and custody of the sheriff by virtue of the levy of a mortgage *fi. fa.* prior to the time when the petition was sanctioned and filed.

(2) That it is not made to appear that the appointment of a receiver and the granting of injunction would be beneficial to petitioners, and not wrongfully injurious to the preferred creditors of Willcox.

(3) That the only remedy of petitioners is by attachment under §3297, or by illegality under §3979 of the code.

(4) That the court has no jurisdiction to grant the prayer of the petition under the facts set out therein.

(5) The petition shows no cause for equitable relief, nor for such extraordinary remedies as are prayed.

(6) The petition and amendment are not legally verified.

Hunt, sheriff, answered that about three o'clock on the morning of September 25th, 1888, he levied a mortgage *fi. fa.* in favor of Lewis, Leonard & Co. on all the personal property of Willcox and closed and locked up Willcox's place of trade and business; that Willcox had ceased to be a trader and was not engaged in any vocation when the petition was sanctioned and filed; and that all the personal property of Willcox, together with his shops and place of trade, were in the custody of respondent, as sheriff, by virtue of two levies under two mortgage *fi. fas.*, before any demand had been made upon him by a receiver, and before he had any knowledge that a receiver had been or would be appointed.

Willcox answered to the same effect. He denied the allegations in the petition that he had been selling off his stock below cost; that the mortgages were fraudulent, and did not represent his true indebtness to Lewis, Leonard & Co.; that his indebtness was made up largely

of usury; and that Lewis, Leonard & Co. were aiding him to defraud his creditors. He averred that the rate of interest charged him by Lewis, Leonard & Co. was about 8 per cent., certainly not as much as 9 per cent. per annum; denied that he was contracting new indebtedness; and averred that all the notes taken up by him from Lewis, Leonard & Co. and R. G. Lewis had been destroyed except five small notes; and that up to the time he was closed out by the sheriff he was trying to carry on his business in a legitimate way.

Lewis, Leonard & Co. and R. G. Lewis filed a long and apparently full answer. Among other things, they admitted that the $300 mortgage *fi. fa.* was issued at night, but alleged that the mortgage, with the affidavit of foreclosure attached, was in the hands of the clerk before *fi. fa.* was issued. They had large claims against Willcox, and hearing that other creditors were arranging to place the property in the hands of a receiver, had the *fi. fa.* issued and levied to protect themselves, and the levy was made at least five hours before a receiver was appointed. The affidavit to foreclose was made before one who was a notary public of the county, acting and recognized as such. The affidavit of foreclosure and other papers were filed before the appointment of a receiver, etc. The $10,000 mortgage was foreclosed and levy made before the receiver made a demand upon the sheriff, and said mortgage has been filed as required by law. The two mortages represent an actual indebtedness, and are not made up largely of usury. Lewis, Leonard & Co. have not been amply secured by collaterals; are not aiding Willcox to defraud his creditors; have not taken possession of his books and accounts to carry out the scheme; did not know of his financial condition, and that he had been insolvent for years, or that he is insolvent now, and they deny that they have so stated. When they told certain parties that Willcox only owed them about

$3,500 on mortgages, he was also indebted to them several thousand dollars on open account. The indebtedness represented by the mortages is just, due and unpaid, and there is very little, if any, usury connected with it; and the plea of usury, being a personal privilege, cannot be taken advantage of by petitioners so as to drag into this litigation matters that occurred before the origin of the debts claimed by the petitioners, none of which were created before November, 1887. Lewis, Leonard & Co. have been doing business with Willcox as a trader since January 1st, 1886, and before that time had had transactions with a firm with which he was connected, and with him as an individual; their dealings with him were large, embracing many items, many of them having no connection with his present indebtness; they consisted almost entirely of cash deposits and collaterals, against which checks were drawn from time to time. In the course of dealings they took only a few notes, which have all been paid, in addition to the notes they now hold against him, which are referred to in the petition. They charged him no usury, unless it were a dollar or two paid them by him seven or eight years ago on borrowed money. They set forth the amount of interest paid them by him from time to time, and state their willingness to submit their books, etc. They set forth the amount of his indebtedness to them on and since January 6th, 1887, and state a certain agreement which they made with him to charge him a usurious rate of interest on part of the indebtedness, but claim that the usury was subsequently remitted on a settlement between them, and that a new agreement was substituted under which they would get about 8 per cent per annum. They set forth circumstantially the consideration of the various notes they hold against him, and attach a list of the collaterals in their hands received from him, some of which they say they received on the night of September 24th, 1888, but none since that

time. They have tried to aid him in a legitimate way, and not otherwise, and they are trying in good faith to collect their debts. When they learned, after dark of September 24th, 1888, that an effort would be made to put the business of Willcox into the hands of a receiver, they determined to foreclose their mortgages; the large mortgage was then in their safe under a time-lock, so the small one was secured and foreclosed that night. They acted as they did because they were anxious to avoid delay and the expense of a receivership, and to secure a speedy settlement of their debts.

At the hearing, the petition and amendment and the various answers were read, and in addition the following evidence was introduced for plaintiffs: Various affidavits tending to show that in July, 1888, R. G. Lewis stated that the amount of mortgages he had against Willcox was $3,500, and thought Willcox was doing better and would be able to pull through; that the receiver sold the personal property of Willcox at public outcry, and R. G. Lewis bought $350.56 worth; Hodge $1,468.35 worth, J. N. V. Williams $1,303.50 worth; that Lewis paid not only for the property bid off by himself but also for that bid off by Hodge and Williams, and immediately after the sale Willcox went back into the possesion of the property, and is still in possession, but how he went back into possession or for whom he holds it, witness did not know; that one Rivers bid at the receiver's sale for a number of articles, but bought nothing, and a few days after the sale he went to Willcox and asked him about a saddle, but Willcox seemed to be offended, and said that Rivers seemed to be working against him the other day; and that sometime afterward, Willcox came to Rivers and begged his pardon, and said he had no right to be offended at anything Rivers did on the day of sale. It was admitted that the receiver had sold the personal property of Willcox for about $3,600.

The testimony introduced for defendants tended to show as follows :   A number of persons who had been in the employment of Willcox, and who claimed to be familiar with his business, made affidavit that Willcox was not engaged in selling his property below cost, but was carrying on his business in a thoroughly legitimate way and doing his best for his creditors, without any collusion or secrecy or design to defraud.   Hunt, sheriff. made an affidavit which was substantially a repetition of his answer ; and Hodge made affidavit that he did not take  the mortgages or other papers from the clerk or from the clerk's office, as alleged by plaintiffs, nor refuse to deliver them when demanded ; and that the entire business of Willcox had ceased four or five hours before the petition was sanctioned or filed, and all his means of carrying on his business and his place of business were in the custody of the sheriff by the levies of the mortgage *fi. fas.*

The judge ordered (1) that the injunction issue as prayed for, and continue of force until the final disposition of the case; (2) that Joiner be made permanent receiver, and be authorized and directed to take possession of all the property of Willcox, manage it under the direction and order of the court, collect the debts due Willcox, rent his real estate, deposit the money received in bank subject to the order of the court, sell all personal property that might come into his possession, after advertisement ; and that Willcox turn over to the receiver all books, accounts, etc. belonging to him or in his power, etc. and all realty owned or controlled by him.   Defendants excepted.

M. T. HODGE and W. L. GRICE, for plaintiffs in error.
PATE & JORDAN and MARTIN & SMITH, *contra*.